'IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTORIA ROSE DRESSEL,
*Plaintiff*,

v.

Civil Action No. ELH-19-1556

SAFEWAY, INC.,
*Defendants*.

**MEMORANDUM OPINION**

Victoria Dressel, while proceeding *pro se*, filed an employment discrimination action against Safeway, Inc. ("Safeway") on May 28, 2019. ECF 1; ECF 1-1 (collectively, the "Complaint"). She appended seven exhibits to the Complaint (ECF 1-2 to ECF 1-8). Dressel alleges that Safeway discriminated against her on the basis of a physical disability and failed to provide her with a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990 (the "ADA"), as amended, 42 U.S.C. § 12101 *et seq*. ECF 1 at 4-6; *see* ECF 1-1 at 3. Thereafter, Ms. Dressel retained counsel, who entered a notice of appearance on September 10, 2019. ECF 18.

More than a year later, on August 17, 2020, plaintiff moved to amend the Complaint. ECF 33 (the "Motion"). The Motion was filed five weeks after the extended deadline for amendment of pleadings. A proposed amended complaint ("Amended Complaint") (ECF 33-2) was appended to the Motion.

The Amended Complaint contains three counts. In addition to the claim for failure to provide reasonable accommodation (Count Two), the Amended Complaint asserts two new claims: "intentional disability discrimination," in violation of the ADA (Count One), and failure to "engage . . . in an interactive process, in good faith," in violation of the ADA (Count Three).

ECF 33-1 at 6-7.  Additionally, each count includes a new demand for $300,000 in damages "for emotional distress" as well as $500,000 in punitive damages, in contrast to the $18,000 in punitive damages originally sought.  *Id.*

Safeway opposes the Motion.  ECF 34.  Plaintiff has replied.  ECF 37.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I. Background[1]

As noted, plaintiff was self-represented at the time the suit was filed.  For present purposes, it is not necessary to provide a full recitation of the factual allegations.  However, some background is useful to understand the dispute.

According to the Complaint, in February of 2016 Ms. Dressel was employed at a Safeway store in Baltimore County, Maryland, where she worked "as a sandwich maker." ECF 1 at 2; ECF 1-1 at 1.  Plaintiff alleges that on February 17, 2016, she "sustained injuries to [her] knees as a passenger in an automobile accident," and did not return to work for one week.  ECF 1-1 at 1.  On February 29, 2016, plaintiff was allegedly "reassigned" to "tend[] the hot bar and prepare[] rotisserie chickens," which required "lift[ing] 50-60 pounds of chicken about 10-30% of the time" and doing "more cleaning up." *Id.*

On May 8, 2016, Ms. Dressel "went to Patient First and was put on light duty restrictions of no bending and not lifting 10 pounds for the next 10 days." *Id.*  The following day she "provided these restrictions to the store manager," who then did not "allow [her] to return to work." *Id.*  According to plaintiff, on May 11, 2016, her "general physician" extended the work restrictions

---

[1] For purposes of the Motion, the Court shall assume the truth of the factual allegations in the Complaint.

through late June.  *Id.*  A subsequent "MRI show[ed] clear trauma to [her] knees due to the car accident."  *Id.*

Ms. Dressel did not return to work.  *See id.* at 1-3.  Plaintiff alleges that she sought to participate in the "formal Job Accommodation Committee process (JACP) with HR representative, Jessica Page. . . ."  *Id.* at 1.  The Complaint references a letter dated July 19, 2016, which Ms. Page sent to plaintiff, and which is appended to the Complaint.  *See* ECF 1-2; *see also* ECF 1-1 at 2.  The letter begins: "You have indicated that you may have a medical condition, which may or may not have a bearing on you [sic] job as Service Clerk/Deli.  It is possible you may need a job accommodation."  ECF 1-2 at 1.  The letter also outlined the process by which defendant was to seek an evaluation from plaintiff's "treating physician(s). . . ."  *Id.*  In closing, the letter stated: "[T]he Accommodation Committee will review the records and make a determination as to whether a job accommodation is warranted."  *Id.*

Ms. Dressel asserts that beginning in September 2016, she "experienced untimely responses from Ms. Page" regarding the status of the JACP process.  ECF 1-1 at 2.  Further, plaintiff alleges that on various dates during January and February of 2017, she contacted or attempted to contact Ms. Page, either to provide or request updates.  *Id.*  In particular, Ms. Dressel claims that on or after January 8, 2017, she spoke with Ms. Page, who told plaintiff that she "thought [plaintiff] was back to work[.]"  *Id.*

On March 7, 2017, Ms. Dressel submitted an intake questionnaire to the U.S. Equal Employment Opportunity Commission ("EEOC").  *Id.* at 1; *see* ECF 1-2 at 24-27.  In response to the question, "What happened to you that you believe was discriminatory?" plaintiff wrote: "I was never accommodated for a doctor-exhausted, light duty position due to a car accident.  It has taken too long."  EF 1-2 at 25.

Ms. Dressel avers that on March 21, 2017, Ms. Page informed plaintiff that "the Job Accommodation Committee chose the Starbucks position for [her]." ECF 1-1 at 2. Plaintiff asserts that she told Ms. Page that that her "injuries would not allow for [her] to perform the full duties required," and she asked to be considered instead "for the Pharmacy Technician position." *Id.* According to plaintiff, Ms. Page "agreed." *Id.*

During April and May of 2017, plaintiff submitted additional paperwork to Ms. Page and had multiple exchanges with her. *Id.* at 2-3. Then, on July 11, 2017, Ms. Page called plaintiff and told her "to call different stores to see if they had any available Pharmacy Technician positions. She said that she would also do the same." *Id.* at 3. Plaintiff did not "receive favorable responses from the stores at the time," nor did she "receive any communication from Ms. Page regarding her search." *Id.*

Ms. Dressel was not contacted by Ms. Page until November 2018, when Ms. Page offered her "the Pharmacy Technician position." *Id.* At that time, plaintiff "was negotiating with them through the EEOC." *Id.* Plaintiff adds that she did not "receive[] a regular paycheck from Safeway, Inc. from August 2016 to September 2018, when they let [her] go." *Id.* at 1.

As noted, Ms. Dressel initiated this suit on May 28, 2019. ECF 1. Safeway answered on August 2, 2019. ECF 13. The Court issued a Scheduling Order on August 28, 2019 (ECF 17), which set a discovery deadline of January 21, 2020. *Id.* at 3. Counsel for plaintiff entered his appearance almost a year later, on September 10, 2019. ECF 18. And, at the parties' request (ECF 19), by Order of September 26, 2019 (ECF 22), I stayed discovery while the parties explored settlement. The case did not settle, however.

By Scheduling Order of February 25, 2020 (ECF 28), I granted the joint motion to modify the Scheduling Order. *See* ECF 27. The Court set April 20, 2020, as the deadline for amendment

of pleadings. ECF 28. However, in light of the COVID-19 pandemic that has subsequently gripped the nation, Chief Judge Bredar extended certain filing deadlines. In a Standing Order of April 10, 2020, he extended by 84 days all filing deadlines that fell between March 16, 2020 and June 5, 2020.[2] Accordingly, the deadline for amendment of pleadings was extended to July 13, 2020. The Motion was filed on August 17, 2020, five weeks after the extended deadline. ECF 33.

## II.     Standard of Review

Plaintiff has not identified any legal standard applicable to a motion to amend, either in the Motion or the Reply. However, she insists that Safeway will not be prejudiced if the Motion is allowed. Safeway counters that plaintiff has not satisfied either Fed. R. Civ. P. 16 or Rule 15. I discuss each rule, in turn.

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The court "should freely give leave when justice so requires." *Id.* However, where, as here, a party "moves to amend after the deadline established in the scheduling order for doing so, Rule 16(b)(4) becomes the starting point in the Court's analysis." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106 (D. Md. 2013); *see Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020).

---

[2] *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-07 (D. Md. Apr. 10, 2020). On May 22, Chief Judge Bredar issued Standing Order 2020-11. That Order did not, however, modify the Court's prior orders concerning filing deadlines set to fall between March 16 and June 5, 2020.

### A.     Rule 16

Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Thus, a movant must demonstrate good cause to satisfy Rule 16(b)(4). *See Faulconer*, 808 F. App'x at 152; *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue*, 295 F.R.D. at 106-07; *see also United States v. Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("The burden for demonstrating good cause rests on the moving party.").

The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer,* 808 F. App'x at 152 (citation omitted). The Fourth Circuit has endorsed this proposition several times, in line with other circuits. *Id.* at 152 n.1 (collecting cases). "[O]nly diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id.* at 152.

In evaluating diligence, courts focus mainly "on the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (quoting *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB–10–2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012)). Notably, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Wonasue*, 295 F.R.D. at 107 (quoting *CBX Technologies, Inc.*, 2012 WL 3038639, at *4).

If, for example, the "moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party" has not acted diligently, and thus "cannot establish good cause under Rule 16." *Faulconer,* 808 F. App'x at 152. In contrast, where "'at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline,' a plaintiff has 'good cause' for moving to amend at a later

date." *Wonasue*, 295 F.R.D. at 107 (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768 (D. Md. 2010)).

In determining whether the moving party has met its burden to show good cause, courts may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520. However, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors . . . generally will not be considered.'" *Faulconer,* 808 F. App'x at 152 (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)); *accord Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("'If [the moving party] was not diligent, the inquiry should end.'") (citation omitted).

### B. Rule 15

If the moving party demonstrates good cause pursuant to Rule 16(b)(4), she must then "satisfy the liberal standard of Fed. R. Civ. P. 15(a)." *Humane Soc'y of the United States v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, DKC-13-1822, 2016 WL 3668028, at *2 (D. Md. July 11, 2016); *see Cook v. Howard*, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012); *Nourison*, 535 F.3d at 298; *Wonasue*, 295 F.R.D. at 106-07.

Under Rule 15(a), a court should deny leave to amend in three circumstances: "'when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.'" *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)); *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Under Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'" *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d at 503, 510 (4th Cir. 1986)). A proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted, and thus would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Save Our Sound OBX*, 914 F.3d at 228; *Davison*, 912 F.3d at 690; *see also Martin v. Duffy*, 858 F.3d 239, 247-48 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where the plaintiff's "pleading deficiency cannot be cured by amendment of his complaint"), *cert. denied*, ___ U.S. ___ 138 S. Ct. 738 (2018); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F. 3d 312, 320 (4th Cir. 2010) (stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss").

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 687-80 (2009) (expounding on the Rule 12(b)(6) standard); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. But, it is axiomatic that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 570; *see Iqbal*, 556 U.S. at 678 (explaining that "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief).

In short, to survive Rule 12(b)(6), the "'plaintiffs' factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging their claims across the line from conceivable to plausible.'" *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) (citation omitted).

### III.     Discussion

The gist of plaintiff's argument, advanced in both the Motion and the Reply, is that the Complaint gave Safeway adequate notice of all the claims plaintiff now seeks to bring. The Motion states that the Amended Complaint merely "restates the facts" and "clarifies" the Complaint. ECF 33 at 2-3. Further, plaintiff asserts that "a careful reading" of the Complaint reveals factual allegations that "support[] a claim for the failure to engage in an interactive process." *Id.* Accordingly, the Amended Complaint includes such a claim as Count Three. *See* ECF 33-2 at 9. With respect to the other claims new to the Amended Complaint—namely, the "intentional disability discrimination" claim in Count One and the emotional distress claims embedded in each count—Ms. Dressel contends that the Complaint "apprised" and "advised" defendant that she was bringing such claims. *See* ECF 37 at 2, 6.

### A.     Rule 16

Safeway contends that Ms. Dressel has not demonstrated good cause. ECF 34 at 3-4. First, defendant asserts, plaintiff's counsel was "aware of the material facts surrounding Plaintiff's 'interactive process'" since entering an appearance in the case in September 2019. *Id.* at 4. Further, Ms. Page's deposition did not reveal "any materially new or different facts about" defendant's communications with plaintiff. *Id.* at 4. "The only explanation for Plaintiff's delay in seeking to amend," in defendant's view, "is Plaintiff's own lack of attention or care with respect to the Court's deadlines." *Id.* at 5.

Safeway also insists that it would be prejudiced if the Motion were granted, although it does not explicitly tie this argument to the standards under either Rule 16 or Rule 15. In defendant's view, if the Motion were granted this would require Safeway to respond to entirely new claims for intentional discrimination and emotional distress, respectively, as well as the


demand for $500,000 in punitive damages, an amount over twenty-five times greater than the amount of punitive damages demanded in the Complaint. *Id.* at 6-8. Defendant argues that having to mount these defenses at this stage of the litigation would be prejudicial. As defendant notes, the deadline for completion of discovery is October 27, 2020, per the Scheduling Order of July 29, 2020 (ECF 32). *See* ECF 34 at 5-7.

At the outset, I note that Ms. Dressel's Motion was untimely, though not excessively so, due to the unanticipated extension resulting from the pandemic. The deadline for amendment of pleadings was extended by almost three months, pursuant to the Standing Order. Yet, the Motion was not filed until five weeks after the extended deadline.

Nonetheless, plaintiff must satisfy Rule 16's good cause standard. *Faulconer*, 808 F. App'x at 152; *Wonasue*, 295 F.R.D. at 106. Ms. Dressel presents no argument as to why she has good cause to amend. Even after the Opposition invoked Rule 16, plaintiff did not address the rule's good cause requirement in the Reply. More important, plaintiff does not appear to suggest, let alone contend, that she was diligent, despite her tardiness. The absence of any explanation for the tardiness is striking, given that plaintiff acknowledges only the original deadline for amending pleadings of April 20, 2020, and not the extended deadline of July 13, 2020. *See* ECF 33 at 2. According to plaintiff's own reasoning, the Motion was overdue by four months, not five weeks.

At first glance, Ms. Dressel seems to suggest that adding Count Three, the interactive process ADA claim, is warranted because new information came to light during discovery. Plaintiff asserts: "One fact that stands out in the deposition of Jessica Page is that Defendant did not propose or suggest any jobs which the Plaintiff could work at with her disabilities. Plaintiff now seeks to amend the complaint to assert a claim for failure to engage in an interactive process." ECF 33 at 2. The Amended Complaint, however, does not substantively change the factual

allegations regarding Ms. Page's communications with plaintiff. *See* ECF 33-2 at 3-8 (displaying the Amended Complaint's proposed revisions to the factual allegations). Whatever testimony stood out to plaintiff during the deposition apparently did not supply the basis for new factual allegations, contrary to what the Motion implies. Even if plaintiff had obtained new information late in discovery, she would still need to show that she had diligently sought to meet the applicable discovery deadlines. *See Wonasue*, 295 F.R.D. at 108 (reasoning that plaintiff allegedly obtained new information only one week before discovery deadline because of her own "considerable, avoidable delay," which showed lack of diligence).

Moreover, Ms. Dressel has not provided any explanation for the delay in seeking to add either the intentional discrimination ADA claim or the emotional distress claim, or to increase the amount demanded in damages. With respect to these claims, plaintiff does not suggest that she obtained new information late in discovery, and indeed, the Amended Complaint does not contain any materially different factual allegations that would support such a claim. *See* ECF 33-2 at 3-8. In fact, plaintiff emphasizes this point herself in the Reply, asserting that "all of the facts set forth in the Amended Complaint are derived from the original complaint." ECF 37 at 1.

Plaintiff's failure to provide any explanation as to why she filed the Motion after it was due, and nearly one year after plaintiff's counsel entered an appearance in this case, indicates a lack of diligence. *See Faulconer*, 808 F. App'x at 152 (denying motion to amend under Rule 16(b)(4) because of eight months' delay and absence of explanation); *cf. Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) (denying motion for leave to amend to join additional parties where movant was "put on notice" approximately ten months prior of reason to add parties). And, because plaintiff has failed to demonstrate diligence, the Rule 16 analysis need go no further. *See Faulconer*, 808 F. App'x at 152; *Rassoull*, 209 F.R.D. at 374.

Therefore, I need not address the parties' remaining arguments, including those regarding prejudice.

For the foregoing reasons, I shall deny the Motion, without prejudice, because it does not satisfy Rule 16(b)(4).

### B.     Rule 15

In the alternative, I conclude that the proposed addition of Count Three would be futile under Rule 15(a), because there is no independent cause of action under the ADA for failure to engage in an interactive process.

Count Two of the Amended Complaint alleges a failure to provide reasonable accommodation, in violation of the ADA. ECF 33-1 at 6-7. Count Three of the proposed Amended Complaint alleges a "failure to engage plaintiff in an interactive process" in violation of the ADA. *Id.* at 7. "Had Defendant engaged the Plaintiff in an interactive process," Ms. Dressel claims, "a reasonable accommodation would have been found." *Id.* at 7-8. In support of the viability of Count Three, plaintiff cites Fourth Circuit case law discussing an employer's "good-faith duty" under the ADA to engage with an employee in an interactive process after the employee "communicates her disability and desire for an accommodation." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015); *see* ECF 37 at 5.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'"). A "qualified individual" is defined as a person

who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m); *see also Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015).

One form of discrimination that Title I of the ADA prohibits is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" *Id*. §12112(b)(5)(A); *see Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 344 (4th Cir. 2013); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011).

For present purposes, it is not necessary to delve into the details of what constitutes reasonable accommodation under the ADA, or what exactly plaintiff must show to establish a prima facie case of failure to provide reasonable accommodation. As is relevant here, federal regulations provide, in part: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an *informal, interactive process* with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (emphasis added). The so-called "interactive process" should "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*; *see also Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 399-400 (4th Cir. 2005) ("Implicit in the fourth element [of the prima facie case] is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation").

The responsibility to engage in the interactive process is "*shared* between the employee and the employer." *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1991) (emphasis in original). "A party that obstructs or delays the interactive process, or simply fails to

communicate, is not acting in good faith to find a solution." *Fleetwood v. Harford Systems, Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005). Moreover, "the employer must work with the employee to determine what accommodation would help," and the employer "cannot escape liability simply because the employee does not suggest a particular reasonable accommodation that would assist him." *Id.*

Although an employer's deficient participation in the statutorily-mandated interactive process may furnish a claim for failure to provide reasonable accommodation, it does not give rise to a separate, independent claim. As the Fourth Circuit explained in *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000), *amended* (Apr. 4, 2000)), "[T]he interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'"

To be sure, the "ADA imposes upon employers a good-faith duty 'to engage . . . in an interactive process to identify a reasonable accommodation.'" *Jacobs*, 780 F.3d at 581 (quoting *Wilson*, 717 F.3d at 346). But, the dereliction of that duty does not give rise to a claim apart from one of failure to accommodate. *See Rhodes v. Comcast Cable Commc'ns Mgmt., LLC*, No. CV GLR-14-1824, 2016 WL 4376653, at *10 n.1 (D. Md. Aug. 17, 2016), *vacated in part on other grounds on reconsideration*, No. CV GLR-14-1824, 2017 WL 11454920 (D. Md. July 25, 2017); *Wilson v. Bd. of Educ. of Prince George's Cty.*, No. 12-CV-2092-AW, 2013 WL 3146935, at *8 (D. Md. June 18, 2013) ("failure to engage in an interactive process is merely an element that can be used to establish failure to accommodate. It does not exist as an independent cause of action."); *see also Walter v. United Airlines, Inc.,* 232 F.3d 892, 2000 WL 1587489, at *5 (4th Cir.2000)

(unpublished table opinion); *Bertrand v. Town of Elkton*, No. CV RDB-17-3265, 2019 WL 5212804, at *6 (D. Md. Oct. 15, 2019).

Other circuits agree. *See Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) ("There is no independent cause of action for bad faith interactive process. . . . This is because an employee's claim that her employer took adverse action against her by failing to engage her in an interactive process merely reclothes her discrimination claim."); *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 98 (2d Cir. 2015) ("The point of engaging in an interactive process is to 'discover[ ] a means by which an employee's disability could have been accommodated.'") (citation omitted); *Rehling*, 207 F.3d at 1016 ("To hold employers liable for the failure of an interactive process regardless of whether a reasonable accommodation was made would . . . elevate the ADA's interactive process requirement to an end in itself.").

Accordingly, Count Three fails to state a claim upon which relief could be granted, and would thus be futile for purposes of Rule 15(a). *See Save Our Sound OBX*, 914 F.3d at 228. The factual allegations underlying Count Three may, however, be relevant to Ms. Dressel's claim for failure to provide reasonable accommodation.

### IV. Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 33). However, I will permit counsel to file an Amended Complaint that restates the original allegations, to the extent necessary for clarity, in a manner typical of a presentation prepared by a lawyer. Counsel may not, however, add new claims.

An Order follows.

Date: October 2, 2020                             /s/
                                                                  Ellen L. Hollander
                                                                   United States District Judge